1    V James DeSimone, SBN 119668
     Michael D. Seplow, SBN 150183
2    Michael Morrison, SBN 205320
     Supreeta Sampath SBN 232190
3    SCHONBRUN DeSIMONE SEPLOW
     HARRIS & HOFFMAN, LLP
4    723 Ocean Front Walk
     Venice, CA 90291
5    Telephone: (310) 396-0731
     Facsimile: (310) 399-7040
6
     Attorneys for Plaintiffs
7
     LAW OFFICES OF THOMAS W. FALVEY
8    THOMAS W. FALVEY, SBN 65744
     J.D. HENDERSON, SBN 235767
9    301 North Lake Avenue, Suite 800
     Pasadena, CA 91101
10   Telephone: (626) 795-0205
     Facsimile: (626) 795-3096

11

12                   UNITED STATES DISTRICT COURT

13                 SOUTHERN DISTRICT OF CALIFORNIA

14

15   MICHAEL DOYLE, JOHN C SHIEH,          )   Case No.: 08 CV 1275 JAH WMC
     JANICE BANNIGAN, SID LOYOLA, JEFF     )
     MARK on behalf of themselves, the general )  [Honorable John A. Houston]
16   public and all others similarly situated )
                                            )
17                   Plaintiffs,            )   PLAINTIFFS' MEMORANDUM OF
                vs.                         )   POINTS AND AUTHORITIES IN
18                                          )   SUPPORT OF MOTION FOR ORDER
     AT&T SERVICES, INC. (Formerly SBC     )   GRANTING FINAL APPROVAL OF
19   Services, Inc.) And DOES 1 through 10  )   CLASS ACTION SETTLEMENT
                                            )
20                   Defendants.           )   Date: March 1, 2010
                                            )   Time: 2:30 pm
21   _____ )     Courtroom: 11

22

23

24

25

26

27

28

                                                                  08CV1275

**TABLE OF CONTENTS**

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  SUMMARY OF THE CASE AND THE PARTIES' ALLEGATIONS . . . . . . . . . . . . . . . . 2

III.  CLASS CERTIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  SUMMARY OF SETTLEMENT TERMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       A.    Total Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       B.    Payment of Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       C.    Enhancement for the Class Representatives . . . . . . . . . . . . . . . . . . . . . 4

       D.    Attorneys' Fees and Costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       E.    Payment to Labor Workforce and Development Agency . . . . . . . . . . . . 5

       F.    Administration of Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

V.  THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE . . . . . . . . . . . . . . . . 6

       A.    The Amount of Settlement Is a Fair Compromise of Vigorously
            Contested, Factually Complex Claims, Subject to Many Legal
            Uncertainties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       B.    The Extent of Investigations by the Parties Was, and Is, Suffcent
            to Allow Counsel, and this Court, to Support the Settlement . . . . . . . . 10

       C.    Plaintiffs' and Defendant's Counsel Are Experienced and Jointly
            Support the Settlement, and the Settlement Is the Product of
            Serious, Informed, Non-collusive Negotiations . . . . . . . . . . . . . . . . . 12

       D.    The Reaction of Class Members to this Settlement Has Been
            Overwhelmingly Positive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VI.  THE CLASS NOTICE WAS PROPER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VII.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Behrens v. Wometco Enterprises, Inc.*
   118 F.R.D. 534 (S.D. Fla. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Blackwell v. Skywest Airlines, Inc.*
   245 F.R.D. 453 (S.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*Class Plaintiffs v. City of Seattle*
   955 F.2d 1268 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

*Detroit v. Grinnell Corp.*
   495 F.2d 448 (2d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ellis v. Naval Air Rework Facility*
   87 F.R.D. 15 (N.D. Cal. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Fisher Bros. v. Cambridge Lee Industries, Inc.*
   630 F.Supp. 482 (E.D. Pa 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

*Heffelfinger v. Electronic Data Systems Corp.*
   580 F.Supp.2d 933 (C.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Huang v. AT&T Services, Inc. et al.*
   Case No. 06CV2238 DMS (Wmc) (S.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . 4, 9

*In re Beef Industry Antitrust Litigation*
   607 F.2d 167 (5th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Domestic Air Transp. Antitrust Lit.*
   148 F.R.D. 297 (N.D. Ga. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Four Seasons Securities Laws Litigation*
   525 F.2d 500 (10th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Mego Financial Corp. Securities Litigation*
   213 F.3d 454 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Omnivision Technologies, Inc.*
   U.S. Dist. LEXIS 95615 p. 21 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . 9-10

ii

*In re Warner Communications Securities Litigation*
    618 F.Supp.735 (D.C. NY 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Iowa Beef Processors, Inc. v. Meat Price Investigators Ass'n*
    452 U.S. 905 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Jamison v. Butcher & Sherrerd*
    68 F.R.D. 479 (E.D. Pa 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Linney v. Cellular Alaska Partnership*
    151 F.3d 1234 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Miller v. Republic Nat. Life Ins. Co.*
    559 F.2d 426 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Newman v. Stein*
    464 F.2d 689 (2d. Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*
    688 F.2d 615 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Shoff v. AT&T Services, Inc. et al.*
    Case No. CV07-3289 DSF (AGRx) (C.D. Cal 2009) . . . . . . . . . . . . . . . . . . . 4, 9, 12

*West v. Circle K Stores, Inc.*
    Case No. CIV S 04-0438 WBS GGH, 2006 U.S. Dist. LEXIS 76558 *3
    (E.D. Cal. June 13, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**STATE CASES**

*7-Eleven Owners for Fair Franchising v. Southland Corp.*
    85 Cal.App.4th 1135 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Dunbar v. Albertson's Inc.*
    141 Cal.App.4th 1422 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Rebney v. Wells Fargo Bank*
    220 Cal. App. 3d 1117 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

iii

*Sav-on v. Superior Court*
     34 Cal.4th 319 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wershba v. Apple Computer, Inc.*
     91 Cal.App.4th 224 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## STATUTES

California Business and Professions Code
     § 17200 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

California Code of Civil Procedure
     § 3294 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     § 3336 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

California Labor Code
     § 203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     § 226.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     § 1194 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     § 2699 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fair Labor Standards Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Federal Rule of Civil Procedure
     23 (e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 13, 14

## OTHER AUTHORITIES

*Newberg on Class Actions* (4th ed. 2002)
     § 8.32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
     § 11.41 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

iv

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.      INTRODUCTION**

3       Plaintiffs Michael Doyle, et al. ("Plaintiffs") brought this class action lawsuit against

4  Defendant AT&T Services, Inc. ("Defendant" or "AT&T") on behalf of a class of IT employees

5  in order to recover overtime wages and other benefits which are due and owing under California

6  law.  After months of investigation and discovery, which included sending surveys to Class

7  Members, interviewing dozens of Class Members, reviewing data and documents provided by

8  AT&T and consulting with an expert to determine the extent of the wages owed to Class

9  Members, counsel was successful in reaching a settlement that will establish a Maximum Payout

10  amount of $10,500,000 to settle the claims in this lawsuit.

11       The settlement, which was reached after arms-length, non-collusive negotiations and with

12  the assistance of a well-respect mediator (who proposed the settlement amount), is truly an

13  excellent result for the Class.  Indeed, the per week value Class Members will receive as part of

14  this settlement (approximately **$125.00**) actually <u>exceeds</u> the amounts obtained in two similar,

15  previous class action lawsuits involving AT&T's California IT employees that were approved by

16  Courts (*Huang v. AT&T Services, Inc.* and *Shoff, et al. v. AT&T Services, Inc.*).  The conclusion

17  that this settlement is an excellent result is bolstered by the fact that more than 67% of Class

18  Members have participated in the settlement and 73.9% of compensable workweeks have been

19  claimed.

20       The lone objection to this settlement should be overruled.  There is no case authority

21  which holds that a notice of settlement must state the impact it will have on retirement benefits

22  when the settlement does not impact retirement benefits or purport to do so in any way.  In fact,

23  there is nothing in the settlement agreement which even remotely suggests that retirement

24  benefits would be impacted.  The objector's other contentions regarding Plaintiffs' attorneys'

25  fees are addressed in the concurrently filed Motion for Attorneys' Fees, Costs, Claims

26  Administration Expenses and Class Representative Enhancements.

27       Accordingly, this settlement should be approved as it is fair, reasonable and in the best

28  interest of class members.

II.    **SUMMARY OF THE CASE AND THE PARTIES' ALLEGATIONS.**

On July 15, 2008, Plaintiffs Michael Doyle, John C. Shieh, Janice Bannigan, and Sidney Loyola commenced a purported class action against AT&T Services, Inc. in the United States District Court, Southern District of California, Case No. 08 CV 1275 ("the Action").  On September 8, 2008, Defendant filed its answer to the Complaint.  Plaintiffs later moved for leave to file an amended complaint to include another named plaintiff, Jeff Mark, and to amend the class definition, which Defendant opposed, and the Court did not rule on the motion prior to this Settlement.  For purposes of this settlement, Jeff Mark is deemed a Plaintiff and a Class Representative.

Plaintiffs allege that they and the members of the Exemption Class (defined in Section III, below) were misclassified as exempt from state overtime law and not paid compensation for overtime hours they worked, including interest and penalties.  Plaintiffs further allege that they and members of the AWS Class (defined in Section III, below) were not paid all wages owed, including overtime payments, as required by state law, including interest and penalties.  As to both the Exemption Class and the AWS Class, Plaintiffs allege that Defendant failed to provide meal periods, failed to authorize and permit rest periods, and failed to provide proper pay statements, as required by California law.  The operative complaint contains the following causes of action: failure to pay overtime compensation pursuant to California Labor Code ("Cal. Lab. C.") § 1194 and the federal Fair Labor Standards Act; failure to provide meal and rest periods pursuant to Cal. Lab. C. § 226.7; waiting time penalties pursuant to Cal. Lab. C. § 203; conversion pursuant to California Civil Code §§ 3336 and 3294; and unfair business practices pursuant to California Business and Profession Code § 17200 et. seq.

The Parties, with this Court's consent, engaged in months of informal and intense discovery and settlement negotiations. Specifically, Class Counsel conducted significant discovery and legal analysis during the prosecution of this action.  Class Counsel conducted numerous interviews with Class Members – exceeding 100 individuals prior to the mediation. Declaration of Thomas W. Falvey ("Falvey Decl."), ¶ 19. Class Counsel reviewed and analyzed Defendant's policies on overtime and their policies regarding meal and rest periods, as well as

2

the Defendant's description of the job duties for the job positions at issue.  Class Counsel further analyzed extensive spreadsheets and other data provided by Defendant, and hired an expert to analyze the data and determine the amount of wages and penalties owed.  See Declaration of Michael Morrison ("Morrison Decl."), ¶ 8; Declaration of V. James DeSimone ("DeSimone Decl."), ¶¶ 12, 13.

In addition, Class Counsel developed detailed questionnaires that were sent to the Class Members.  Class Counsel reviewed hundreds of responses, including extensive written comments by Class Members, and conducted numerous interviews with respondents to the questionnaire over a period of several months.  See Morrison Decl., ¶ 9; Falvey Decl., ¶ 47.

Prior to the successful mediation session, Class Counsel prepared a mediation brief, which contained extensive and detailed analyses of liability, class certification and damages issues.  On July 23, 2009, after good-faith negotiations presided over by the well-respected class action mediator, Mark Rudy (who proposed the Maximum Payment as part of a mediator's proposal), the parties finally reached an agreement to settle the Action.  See Morrison Decl., ¶ 10; DeSimone Decl., ¶¶ 13-14.

On October 2, 2009, the Court preliminarily approved the settlement reached by the parties.  Exhibit "2" to Morrison Decl..  In compliance with this Court's order, the parties notified the Labor Workforce and Development Agency of the settlement within ten days of the Court's grant of preliminary approval.  See Morrison Decl., ¶ 11.

**III.    CLASS CERTIFICATION**

By order of this Court dated October 2, 2009, the Court approved the certification of the following classes for settlement purposes:

(a)    **"Exemption Class": All persons who worked for AT&T Services, Inc. in the State of California as Senior Data Center Managers, Data Center Managers, IT Analysts (or Analysts), Database Administrators, and Database Analysts while classified by Defendant as exempt from overtime pay requirements at any time from July 15, 2004 to May 15, 2009; and**

(b)    **"AWS Class": All persons who worked in the Information Technology**

3

08CV1275

department of AT&T Services, Inc. in the State of California while classified by Defendant as non-exempt and who worked Alternative Workweek Schedules (defined as scheduled workweeks that included workdays in excess of 8 hours and less than five work days per week, without payment of daily overtime) at any time from July 15, 2004 through June 30, 2009. Excluded from the AWS Class are persons who meet the above definition, but the relevant time during which they worked Alternative Workweek Schedules was covered by their participation (either by filing a claim form or being eligible to do so and not opting out) in the class actions entitled *Shoff v. AT&T Services, Inc. et al.* (Central District Case No.: CV 07-3289 DSF (AGRX)) and *Huang v. AT&T Services, Inc. et al.* (Southern District Case No.: 06CV2238 DMS (Wmc)).

## IV.   SUMMARY OF SETTLEMENT TERMS

### A.   Total Settlement

The total settlement amount ("Maximum Payout") is ten-million, five-hundred thousand dollars ($10,500,000).

### B.   Payment of Claims

Monetary disbursements to the Class will be made on a claims made basis. The Class is entitled to the remainder of the Settlement, which is the Maximum Payout amount less the attorney fees award and costs, costs of claims administration, payment to the Labor Workforce Development Agency and the Enhancement Payment to the Named Class Representatives. However, only those who have made claims are entitled to receive compensation, with unclaimed funds reverting back to AT&T. The Class Members' Distribution Amount is calculated by: (1) dividing the Remainder of the Maximum Payment by the total number of compensable workweeks, revealing the value per compensable workweek; and (2) multiplying that amount by the number of compensable workweeks worked by each class member submitting timely and valid claims.

### C.   Enhancement for the Class Representatives

The settlement provides for enhancement payments to each of the named Plaintiff Class Representatives Michael Doyle, John C. Shieh, Janice Bannigan, Sidney Loyola and Jeff Mark in

4

1   the amount of Twenty-Five Thousand dollars ($25,000).  This compensation is in addition to

2   whatever portion of the settlement proceeds the named Plaintiffs are otherwise entitled to

3   receive.  The enhancement is intended to compensate Plaintiffs fairly for the additional burdens

4   and risks they undertook by agreeing to serve as Class Representatives, their assistance to

5   counsel in the prosecution of the lawsuit and the excellent result achieved on behalf of the Class.

6         **D.**    **Attorneys' Fees and Costs**

7         Plaintiffs request, and Defendant does not oppose, an award of attorneys' fees of thirty

8   percent (30%) of the Maximum Payment (or $3,150,000) to compensate Class Counsel for all of

9   the work already performed in this case and all work remaining to be performed.

10         Plaintiffs further request, and Defendant does not oppose, payment to Class Counsel of

11   their reasonable litigation costs (approximately $23,418.85) from the Maximum Payment for

12   costs and expenses incurred by Class Counsel in prosecuting the Action and in implementing the

13   terms of this Settlement.

14         **E.**    **Payment to Labor Workforce and Development Agency**

15         A sum of Thirty-Five Thousand Dollars ($35,000) from the Maximum Payment will be

16   paid to the LWDA pursuant to the Labor Code Private Attorneys General Act (the PAG Act"),

17   Cal. Lab. Code § 2699 *et seq.*, to cover any and all claims for penalties that were or could have

18   been brought in this Action.

19         **F.**    **Administration of Claims**

20         The Court designated Rust Consulting ("Claims Administrator") to serve as Claims

21   Administrator.  Beginning the week of November 16, 2009, the Claims Administrator mailed out

22   641 notices to Class Members.   Declaration of Caryn Donly "Donly Decl.", ¶ 9.  The Notice

23   advised the Class of the pertinent terms of the proposed settlement, namely, the claims to be

24   resolved by way of the settlement, the maximum settlement amount, the proposed deductions for

25   attorneys' fees, litigation costs, the class representative enhancements, the payment to the LWDA

26   and estimated claims administration expenses.  The Notice also advised Class Members of the

27   basis upon which their pay rate would be calculated, the manner in which they could submit a

28   claim to receive their share of the settlement, to request exclusion from the settlement or object

5

1  to it, and the manner in which to dispute the information upon which the Claims Administrator

2  would rely to calculate his or her share of the settlement proceeds.  Exhibit "1" to Morrison Decl.

3  (Exhibit "A" to Exhibit "1").

4      Of the 641 notices which were mailed, only nine were returned as undeliverable.  Donly

5  Decl., ¶ 10.  Seven of those notices were re-mailed after Class Members' addresses were updated

6  by the Claims Administrator after a "trace" was conducted.   Donly Decl., ¶ 10.

7      Only one objection to the settlement has been received by Class Counsel.  In addition,

8  there were only 12 opt-outs, while approximately 67% of Class Members submitted claim forms,

9  representing approximately 74% of the total workweeks available.   Donly Decl., ¶¶ 12, 14.  The

10  deadline to object or opt-out of the settlement was January 15, 2009.  The deadline to submit

11  claim forms was January 19, 2009.  Donly Decl., ¶ 9.

12      The Claims Administrator has estimated the highest claim to be $30,911.27, while the

13  *average* claim is estimated at $12,137.97.  Donly Decl., ¶ 13.[1]

14  **V.      THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE.**

15      Before any class action can be settled, Federal Rule of Civil Procedure 23(e) "requires the

16  district court to determine whether a proposed settlement is fundamentally fair, adequate, and

17  reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Class Plaintiffs v.*

18  *City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.), *cert. denied*, 506 U.S. 953 (1992) (same). This

19  determination requires a balancing of several factors which may include, among others, some or

20  all of the following: the strength of Plaintiffs' case; the risk, expense, complexity, and likely

21  duration of further litigation; the risk of maintaining class action status throughout the trial; the

22  amount offered in settlement; the extent of discovery completed, and the stage of the

23  proceedings; the experience and views of counsel; the presence of a governmental participant;

24

25

26  [1]The estimated Claims Administration expenses for which reimbursement is sought is $46,589.22.  Donly Decl., ¶ 16 and Exhibit "A" to Donly Decl..  This excludes any costs

27  associated with the second mailing and calls made by the claims administrator (totaling $3,100), at Class Counsel's behest, to increase participation in the settlement.  Class Counsel shall bear

28  these expenses themselves.  Morrison Decl., ¶ 40.

6

and the reaction of the class members to the proposed settlement. *Hanlon* , 150 F.3d at 1026;

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982),

*cert. denied*, 459 U.S. 1217 (1983); *see also In re Mego Financial Corp. Securities Litigation,*

213 F.3d 454 (9th Cir. 2000).

Where a settlement is reached on terms agreeable to all parties, a court should disapprove

of the settlement "only with considerable circumspection." *Jamison v. Butcher & Sherrerd*, 68

F.R.D. 479, 481 (E.D. Pa 1975).

Courts act within their discretion in approving settlements which are fair, not collusive

and take into account "all the normal perils of litigation as well as the additional uncertainties

inherent in complex class actions." *In re Beef Industry Antitrust Litigation*, 607 F.2d 167, 179

(5th Cir. 1979) *cert. den sub. norm, Iowa Beef Processors, Inc. v. Meat Price Investigators*

*Ass'n*, 452 U.S. 905 (1981).

Furthermore, a proposed class action settlement is *presumed* fair under the following

circumstances: (1) the parties reached settlement after arms' length negotiations; (2) investigation

and discovery were sufficient to allow counsel and the court to act intelligently; (3) counsel is

experienced in similar litigation; and (4) the percentage of objectors is small. *Newberg on Class*

*Actions* (4th ed. 2002) § 11.41.  The declaration of Class Counsel Michael Morrison, V. James

DeSimone Thomas W. Falvey and J.D. Henderson, filed concurrently herewith, demonstrate that

the proposed settlement was the product of serious, informed and non-collusive negotiations,

otherwise proper and one which should be given final approval by the Court, and demonstrate

Counsels' experience in this type of litigation.  With application of these factors, it is manifest

that the proposed settlement provides a benefit to the class and is fair, adequate and reasonable.

    A.    **<u>The Amount of the Settlement Is a Fair Compromise of Vigorously</u>**

        **<u>Contested, Factually Complex Claims, Subject to Many Legal Uncertainties</u>**.

As set forth herein, AT&T disputed liability on the merits of Plaintiffs' claims, including

whether class certification was appropriate in this case.  There are significant legal uncertainties

associated with misclassification, overtime claims based on an improper AWS, as well as rest

and meal period claims.  In cases such as this one, these claims can be factually complex and

7

1  require protracted litigation to resolve.

2          With respect to the Exemption Class, Plaintiffs believe that their case was suitable for

3  class certification because each of the Class Members performed similar job duties as the

4  Plaintiffs and there were company-wide policies that affected employees in a similar manner.

5  Defendant, however, contends that the duties of Class Members varied greatly, even for Class

6  Members with the exact same job titles, and therefore class certification would be unlikely.

7  Morrison Decl., ¶ 13.  Indeed, AT&T maintained that issues with respect to liability and

8  certification required individualized analysis of the nature of the Class Members' work, job

9  duties and responsibilities because AT&T's practices and procedures varied depending upon the

10  entity, department, location, supervisor, job, employee and day.  AT&T raised numerous

11  defenses to liability and certification, meaning there was risk and significant expense associated

12  with class certification proceedings.  Morrison Decl., ¶ 13.

13          Indeed, the cases *Sav-on v. Superior Court*, 34 Cal. 4th 319 (2004) and *Dunbar v.*

14  *Albertson's Inc.*, 141 Cal. App. 4th 1422 (2006) demonstrate the radically different approaches

15  courts can take to similar class certification cases involving misclassification.  The cases

16  demonstrate that class certification is largely a decision left to discretion of the trial court, and

17  therefore the outcome is uncertain.  Morrison Decl., ¶ 14.

18          Moreover, this case involved application of the administrative exemption, which is still a

19  developing area of the law.  For example, a U.S. District Court in California recently found that

20  the administrative exemption applied to employees with arguably similar job duties as the

21  Plaintiffs in this case.  *See Heffelfinger v. Electronic Data Systems Corp.*, 580 F. Supp. 2d 933

22  (C.D. Cal. 2008).  Morrison Decl., ¶ 15.

23          With respect to the AWS Class, Plaintiffs believe that certification is appropriate because

24  Defendant had a centralized policy and practice of assigning its IT employees to AWS shifts

25  without going through the required procedures for implementing an AWS.  Defendant contends,

26  however, that there are numerous individualized inquiries to be made with respect to the AWS

27  class.  The lone case to address the propriety of certifying an AWS class found that class

28  certification would be inappropriate.  *See Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453

8

1    (S.D. Cal. 2007).  Morrison Decl., ¶ 16.

2        In the face of these uncertainties, the parties agreed to a compromise settlement which

3    provides for a claims-made settlement of up to $10,500,000 for the 641 Class Members.  This is

4    approximately 46% of the total overtime owed to the class based on the calculations made by

5    Plaintiffs' expert.  It should also be noted that per week settlement value obtained in this

6    settlement (approximately $125), exceeds that obtained in two recent, similar lawsuits involving

7    AT&T's California IT employees.  In *Huang v. AT&T Services, Inc.*, the Southern District in

8    2008 approved a settlement with a per week value of $105.80.  In *Shoff v. AT&T Services, Inc.*,

9    the Central District approved a settlement with a per week value of $102.20.  Some of the same

10   job positions at issue in *Huang* and *Shoff* were part of this class action.  Morrison Decl., ¶ 17.

11       In determining whether a proposed settlement is reasonable and adequate, appellate courts

12   apply the following analysis:  "It is well settled that in the judicial consideration of proposed

13   settlements, 'the [trial] judge does not try out or attempt to decide the merits of the controversy',

14   and the appellate court 'need not and should not reach any dispositive conclusions on the

15   admittedly unsettled legal issue.'" *7-Eleven Owners for Fair Franchising v. Southland Corp.* 85

16   Cal. App. 4th 1135, 1146, (2000) quoting *Detroit v. Grinnell Corp.* 495 F.2d 448, 456 (2d Cir.

17   1974).

18       Moreover, a settlement is not judged based solely on what might have been recovered if

19   the plaintiff had prevailed at trial; nor does the settlement have to provide 100% of the damages

20   sought to be fair and reasonable. *See Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242

21   (9th Cir. 1998); *Rebney v. Wells Fargo Bank*, 220 Cal. App. 3d 1117, 1139 (1990); *Wershba v.*

22   *Apple Computer Inc.*, 91 Cal. App. 4th 224, 251 (2001) ("Compromise is inherent and necessary

23   in the settlement process ... even if the relief afforded by the proposed settlement is substantially

24   narrower than it would be if the suits were to be successfully litigated; this is no bar to a class

25   settlement in which each side gives ground in the interest of avoiding litigation."); *Officers for*

26   *Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a

27   fraction of the potential recovery does not ... render the settlement inadequate or unfair."); *In re*

28   *Omnivision Technologies, Inc.*, 2007 U.S. Dist. LEXIS 95615, at p. 21 (N.D. Cal 2007) (noting

9

1    the certainty of recovery in settlement of 6% of maximum potential recovery after reduction for

2    attorney's fees was higher than median percentage for recoveries in shareholder class action

3    settlement, averaging 2.2%-3% from 2002-2006).[2]

4          In light of the uncertainties of protracted litigation and the mixed legal precedent

5    regarding the legal positions of the Parties, the Maximum Payout amount reflects an excellent

6    and fair recovery for the Class.  (See Declaration of Barrett S. Litt, ¶¶ 14-17, for a discussion of

7    the risks inherent in class action litigation).  Indeed, the Ninth Circuit has declared that a strong

8    judicial policy favors settlement of class actions.  *West v. Circle K Stores, Inc.*, No. CIV S-04-

9    0438 WBS GGH, 2006 U.S. Dist. LEXIS 76558 *3 (E.D. Cal. June 13, 2006) citing *Class*

10   *Plaintiffs v. City of Seattle*, 955 F.2d at 1276.  Certainty of recovery is enhanced by an equitable

11   and timely consummated settlement such as that under consideration in this case.

12        **B.     <u>The Extent of Investigation by the Parties Was, and Is, Sufficient to Allow</u>**

13               **<u>Counsel, and this Court, to Support the Settlement.</u>**

14        With the Court's permission, the parties engaged in an exchange of significant amounts

15   of informal discovery.  AT&T provided documents relevant in assessing potential liability,

16   damages and impediments to class certification.

17        AT&T further agreed to provide home addresses to a third-party neutral administrator so

18   that Plaintiffs could send surveys to putative Class Members.  One survey was specifically geared

19   to members of the Exemption Class and asked questions pertaining to job duties, hours worked,

20   missed meal and rest breaks as well as salary data regarding the Covered Positions during the

21   Covered Period.  Morrison Decl., ¶ 19.  A second survey was tailored to members of the AWS

22   class and focused more heavily on the type of AWS shift worked by the Class Member and

_____

24        [2]In fact, many settlements have been approved which represented a minuscule fraction of
the damages claimed.  *See Rebney*, 220 Cal.App.3d at 1139 (approving settlement although
25   monetary relief was "relatively paltry"); *see also In re Domestic Air Transp. Antitrust Lit.*, 148
F.R.D. 297, 325 (N.D. Ga. 1993) (approving settlement of 12%-15.3% of possible untrebled
26   damage, i.e., recovery before automatic trebling); *Behrens v. Wometco Enterprises, Inc.*, 118
F.R.D. 534, 543 (S.D. Fla. 1988) (approving settlement of 3-5% of estimated recovery at trial);
27   *Newman v. Stein*, 464 F.2d 689 (2d. Cir. 1972), *cert. denied*, 409 U.S. 1039 (1972) (approving
settlement of 14% of potential recovery).

28

1   whether the Class Member was aware if any of the requirements for implementing an AWS were

2   performed by AT&T.  Plaintiffs' counsel received over 100 surveys from Class Members as well

3   as numerous phone calls from Class Members.  Morrison Decl., ¶ 19.

4         Furthermore, Class Counsel conducted informal interviews with most of the Class

5   Members who responded to questionnaires, as well as dozens of additional Class Members that

6   Plaintiffs located through their own investigation who Class Counsel believed would assist them

7   (and, in fact, did assist them) in establishing liability regarding the exempt status, whether AT&T

8   followed the required procedures for implementing an AWS, as well as potential liability for

9   failure to provide meal and rest periods.  Morrison Decl., ¶ 20; Falvey Decl., ¶ 47; DeSimone

10  Decl., ¶¶ 9, 12-13.

11        AT&T also provided data in the form of spreadsheets which indicated the number of

12  workweeks employees worked in the Exemption and AWS Classes, the average salary and the

13  number of Class Members who were no longer employed by AT&T (for Plaintiffs' waiting time

14  penalties cause of action).  AT&T also provided detailed job descriptions for each of the job

15  titles at issue in this case.[3]  Morrison Decl., ¶ 21.

16        At the mediation with Mark Rudy, the parties exchanged additional data relevant to the

17  merits and certification issues.  Morrison Decl., ¶ 22.  The Parties also considered the advice of

18  Mr. Rudy, who has a great deal of experience resolving wage and hour class actions.  It was Mr.

19  Rudy who proposed the Maximum Payout amount.  Morrison Decl., ¶ 22; DeSimone Decl., ¶ 14.

20        Therefore, at the time the Parties agreed to resolve the case, the Parties had throughly

21  investigated and evaluated the factual strengths and weaknesses of this case and engaged in

22  extensive investigation, research and informal discovery.  This information was thoroughly

23  analyzed by Class Counsel to assess the merits, class certification issues and damages.  Morrison

24  Decl., ¶ 23.  This litigation has reached a point where "the Parties certainly have a clear view of

25  the strengths and weaknesses of their cases" sufficient to support the Settlement.  *In re Warner*

26  *Communications Securities Litigation*, 618 F. Supp. 735, 745 (D.C. NY 1985).

27

28       [3]AT&T conducted its own interviews with Class Members.

11

C.     **Plaintiffs' and Defendant's Counsel Are Experienced and Jointly Support the Settlement, and the Settlement Is the Product of Serious, Informed, Non-collusive Negotiations.**

This is not a case of collusion by counsel for the Parties, but instead, a thoughtful, careful agreement to reach settlement of Class Members' alleged claims by experienced counsel, operating at arms'-length, who have weighed the strengths of the case and examined all issues and risks of litigation and endorse the proposed settlement.  The view of the attorneys actively conducting this litigation "is entitled to significant weight" in deciding whether to approve the settlement. *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd 661 F.2d 939 (9th Cir. 1980); *Fisher Bros. v. Cambridge Lee Industries, Inc.*, 630 F.Supp. 482, 488 (E.D. Pa. 1985).

Both Plaintiffs' and Defendant's counsel are particularly experienced in wage and hour employment law and class actions, including being Class Counsel on the aforementioned *Shoff v, AT&T* case.  Morrison Decl., ¶¶ 3,5; DeSimone Decl., ¶ 7; Falvey Decl., ¶¶ 4-11; Declaration of J.D. Henderson "Henderson Decl.", ¶¶ 4-5.  Class Counsel are very experienced in class actions and other types of complex litigation and have been successful in obtaining large dollar settlements on behalf of a class of persons.  Morrison Decl., ¶¶ 3-6; DeSimone Decl., ¶ 2-7; Falvey Decl., ¶¶ 4-11; Henderson Decl., ¶¶ 4-5.   In light of this experience, Class Counsel are experienced and qualified to evaluate the Class claims and to evaluate settlement, versus trial, on a fully informed basis, and to evaluate the viability of the defenses.

Class Counsel is convinced that this settlement is in the best interest of the class based on the negotiations and a detailed knowledge of the issues present in this action.  Morrison Decl., ¶ 25. The length and risks of trial and other normal perils of litigation that may have impacted the value of the claims were all weighed in reaching the proposed settlement.  In addition, the affirmative defenses asserted by the Defendant, the prospect of a potential adverse summary judgment ruling, class certification issues, the difficulties of complex litigation, the lengthy process of establishing specific damages and various delays and appeals, were also carefully considered by Class Counsel in agreeing to the proposed settlement.  Specifically, Class Counsel

12

08CV1275

balanced the terms of the proposed settlement against the probable outcome of liability and the range of recovery at trial.  Morrison Decl., ¶ 25.

Counsel on both sides share the view that this is a fair and reasonable settlement taking into consideration the complexities of the case, the state of the law and the uncertainties of class certification and litigation, and the excellent result for the Class.  Morrison Decl., ¶ 26.  Given the risks inherent in this litigation and the defenses asserted, this settlement is fair, adequate, reasonable and in the best interests of the class and one which supports a grant of final approval.

**D.** **The Reaction of Class Members to this Settlement Has Been Overwhelmingly Positive.**

The reaction of Class Members to this settlement has been overwhelmingly positive. More than 67% of Class Members have submitted claim forms – which is an exceptional participation rate.   Donly Decl., ¶ 12.  There have only been 12 opt-outs, which is just over 1% of all Class Members, while only one objection has been received.   Donly Decl., ¶ 14. The support of Class Members for this settlement is an additional reason why it should be approved.

**VI.** **THE CLASS NOTICE WAS PROPER**.

The lone objector to this case argues that this settlement should not be approved because the Notice of Class Action Settlement does not state what impact the settlement will have on retirement benefits.   The argument advanced by the objector appears to be that a notice of settlement must appraise class members about issues which are irrelevant to the settlement at hand, as this was an action to recover overtime wages, wages for missed meal and rest breaks and penalties and had nothing to do with retirement benefits.  The objection should be overruled.

"The contents of a Rule 23 (e) notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing." *Newberg on Class Actions* (4th ed. 2002) § 8.32, *citing Miller v. Republic Nat. Life Ins. Co.*, 559 F.2d 426 (5th Cir. 1997) and *In re Four Seasons Securities Laws Litigation*, 525 F.2d 500, 503 (10th Cir 1975) (notice need not provide all information which may be relevant).

13

1       Here, the Notice informs Class Members about (1) the nature of the litigation; (2) the

2   terms of the settlement, including how their share of the settlement proceeds will be calculated;

3   (3) the fact that Class Members must submit a claim to participate in the settlement; (4) that

4   Class Members have a right to exclude themselves from the settlement or object to it; (5) the date

5   of the final approval hearing and the right of any Class Member to appear at the hearing; and (6)

6   where Class Members can obtain more detailed information about the lawsuit.  Exhibit "1" to

7   Morrison Decl. (Exhibit "A" to Exhibit "1" of Morrison Decl.).  The Notice clearly satisfies Fed.

8   R. Civ. Proc. R 23(e) and constitutional due process.

9       Indeed, there was no need to inform Class Members in the Notice about any impact the

10   settlement may have on retirement benefits because it is clear that this settlement has nothing to

11   do with retirement benefits.  The Notice makes clear that this is a lawsuit to recover overtime

12   wages, wages for missed meal and rest breaks and related penalties.  There is no language which

13   even remotely suggests that retirement benefits will be impacted.  The language quoted by the

14   objector that 75% of the payments to Class Members will be treated as wages for tax purposes

15   does not on its face implicate retirement benefits – nor is this a reasonable interpretation from the

16   language.

17       In addition, Class Counsel did not receive any calls asking about the effect of this

18   settlement on retirement benefits – a fact which shows that Class Members were not confused as

19   to what this lawsuit was about.  Morrison Decl., ¶ 27.  To the extent the lone objector wanted to

20   discover more information about the impact of this lawsuit on retirement benefits, the Notice

21   provided him with the contact information of Class Counsel, whom he was free to contact and

22   make inquiries.

23       Finally, the objector's suggestion that Class Members may not have received effective

24   representation because the settlement does not address retirement related issues is wrong.  There

25   is no case law which requires a plaintiff to address issues unrelated to the events which gave rise

26   to the lawsuit in a settlement agreement in order for a class action settlement to deemed fair and

27   reasonable.  If the objector is concerned about retirement benefits, he should seek out a lawyer to

28   file a lawsuit about that issue.  The answer, however, is to not object to a fair and excellent

14

settlement that benefits hundreds of Class Members merely because the settlement does not address an unrelated issue the objector wanted addressed.

**VII.    CONCLUSION**

The Parties have reached an agreement that disposes of the risks, costs and delay associated with further litigation, while allowing payments to Class Members on a fair and equitable basis.  Defendant denies liability, but seek, through this settlement, to obtain closure to this litigation.  The settlement is reasonable, fair, and adequate and should be given final approval.

DATED: February 16, 2010                          Respectfully submitted,

                                SCHONBRUN DESIMONE SEPLOW
                                HARRIS & HOFFMAN LLP

                                LAW OFFICES OF THOMAS W. FALVEY


                                By___ /S/ - Michael Morrison_____
                                    Michael Morrison
                                    Attorneys for Plaintiffs

15

08CV1275